UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDRA GAYLE TUMLIN,

        Plaintiff,

v.                                                                Case No. 2:19-cv-457-FtM-66NPM

COMMISSIONER OF SOCIAL
SECURITY
        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 28). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.      Social Security Act Eligibility and the ALJ Decision**

    **A.      Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[1] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the

---

[1] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

national economy.[2]

### B.    Procedural History

On January 15, 2018, Plaintiff filed an application for a period of disability and disability insurance benefits. (Tr., pp. 144-150). Plaintiff asserted an onset date of November 24, 2016. (*Id.*, p. 144). Plaintiff's application was denied on May 9, 2018, and upon reconsideration on August 8, 2018. (*Id.*, pp. 86, 102).

Administrative Law Judge Duane D. Young ("ALJ") held a hearing on January 4, 2019. (*Id.*, pp. 39-74). The ALJ issued an unfavorable decision on February 4, 2019, finding Plaintiff not disabled from the alleged onset date through the date of the ALJ's decision. (*Id.*, pp. 18-38).

On May 8, 2019, the Appeals Council denied Plaintiff's request for review. (*Id.*, pp. 1-5). Plaintiff then filed a Complaint (Doc. 1) with this Court on July 3, 2019, and the case is ripe for review.

### C.    Summary of the ALJ's Decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) (citing 20 C.F.R. § 416.920(a)(1)). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform

---

[2] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

> other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)–(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burden of production and persuasion throughout the process. *Id*. at 1359; *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v.*

*Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant."); 20 C.F.R. § 404.1512 (providing that the claimant must prove disability).

In this matter, the ALJ found Plaintiff met the insured status requirements through June 30, 2020. (Tr., p. 24). At step one of the evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*). At step two, the ALJ characterized Plaintiff's severe impairments as: "mild lumbar spine degenerative disc disease, generalized anxiety disorder, and depression disorder with later diagnosed bipolar disorder." (*Id.*). At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (*Id.*).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no more than frequent handling and reaching overhead with the right upper extremity; no more than frequent balancing and climbing of ramps and stairs; no more than occasional stooping, kneeling, crouching, crawling, and climbing of ladders, ropes, and scaffolding; precluded from performing complex and detailed tasks; no more than occasional interaction with supervisors and the public; and no more than occasional changes in a workplace setting.

(*Id.*, p. 26). Consequently, the ALJ found Plaintiff unable to perform her past relevant work as a waitress or sales clerk. (*Id.*, p. 31).

Finally, at step five, the ALJ found Plaintiff could perform jobs that existed in significant numbers in the national economy. (*Id.*). In support, the vocational expert identified the following representative occupations an individual with Plaintiff's age, education, work experience and RFC could perform:

4

   (1) housekeeper, DOT 323.687-014, light, SVP 2; and,

   (2) courier, DOT 230.663-010, light, SVP 2.

(*Id.*, p. 32).[3] Consequently, the ALJ concluded Plaintiff was not under a disability from November 24, 2016 through February 4, 2019. (*Id.*).

## II. Analysis

Plaintiff's appeal presents the following issues:

(1) Whether substantial evidence supported the RFC and hypothetical questions to the vocational expert; and

(2) Whether substantial evidence supports the ALJ's finding that jobs existed in significant numbers in the national economy Plaintiff could perform

(Doc. 28, pp. 10, 22). While these two issues appear distinct, Plaintiff raises many RFC issues in her second issue related to the number of jobs in the national economy. The Court will discuss all of the RFC issues—whether raised in issue one or two—under the first issue and then limit the second issue solely to representative jobs and job numbers.

### A. Standard of Review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards."

---

[3] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

*Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that "the evidence preponderates against" the agency's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

    **B.**    **Whether Substantial Evidence Supports the RFC Assessment and Hypothetical Questions to the Vocational Expert.**

Plaintiff argues the ALJ erred in determining Plaintiff's RFC. (Doc. 28, pp. 10-15). Specifically, Plaintiff claims the RFC is not supported by substantial evidence because it does not include: (1) a limitation for excessive absences; (2) a limitation to jobs that require only very short, on-the-job training; (3) a limitation to something less than continuously performing the same work according to set procedures, sequences, or pace; (4) a limitation on reaching with either arm to no more than occasional; and (5) a limitation on lifting no more than twenty pounds occasionally. (*Id.*, pp. 10-15; 22-27).

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a

6

claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Because a Social Security disability adjudication is an inquisitorial proceeding, "ALJs do not simply act as umpires calling balls and strikes." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). "They are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id.*

At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016). For disability cases filed after March 27, 2017, a new standard applies for considering medical opinions. *See* 20 C.F.R. § 404.1520c. The Commissioner no longer defers or gives any specific evidentiary weight, including controlling weight, to any medical opinion or prior medical finding. 20 C.F.R. § 404.1520c(a). Instead, the Commissioner considers the medical opinions together using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant – including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)1-5. The most important factors considered to determine the persuasiveness of the medical opinions or prior administrative medical findings are supportability and consistency. 20 C.F.R. § 404.1520c(a).

### 1.  Excessive Absences

Plaintiff claims in failing to include excessive absences as a limitation on Plaintiff's ability to perform full-time work, the ALJ's decision is not supported by substantial evidence. (*Id.*, p. 14-15). Plaintiff argues absences due to both her mental impairments and her doctors' appointments prevent her from performing full-time work.

*Whether Mental Impairments Prevent Full-Time Work*

Plaintiff relies heavily on a Mental Residual Functional Capacity Assessment ("MRFCA") form completed in October 2018 by Dr. Hosick. (Doc. 28, pp. 12-13).[4] Dr. Hosick checked boxes indicating very extreme, extreme, marked, moderate, and mild limitations in Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr., pp. 417-418). At the end of the evaluation, Dr. Hosick concludes that Plaintiff: "has been diagnosed with Bipolar II disorder, Panic disorder with agoraphobia and Chronic PTSD. All of these severely impair her capacity to respond appropriately emotionally and cause significant cognitive impairment. Her panic/agoraphobia prevents her from working in a social setting." (*Id.*).

The new regulations differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3). Thus, Dr. Hosick's findings regarding the severity of Plaintiff's mental

---

[4] Plaintiff claims the ALJ did not recognize that Dr. Hosick is a qualified medical professional. Plaintiff does not support this statement with citation to the record and the Court finds no evidence to support this claim.

impairments are not medical opinions or objective medical evidence, but rather other medical evidence, and need not be considered as a medical opinion. Further, Dr. Hosick's conclusion—which is in part a medical opinion—does not prevent Plaintiff from working, but rather limits her ability to work in a social setting. (Tr. p. 418). And the RFC accounts for this limitation by limiting Plaintiff to no more than occasional interaction with supervisors and the public. (*Id.*, p. 26).

While not a medical opinion, the ALJ still considered the MRFCA, and in assigning it little weight, the ALJ reasoned that Dr. Hosick's findings are "vastly contrasted to the relatively normal mental status examination findings throughout the record." (*Id.*, p. 29). Although the ALJ noted that at times Plaintiff had speedy thoughts, excess worry, irritability, poor concentration, distressing memories, and difficulty sleeping, the ALJ pointed out that the records are replete with normal mental status exams, such as a May 2016 normal psychiatric finding and a November 2017 "entirely normal psychiatric finding[.]" (*Id.*, pp. 25, 26, 27, 29, 30, 312, 324, 346, 350, 356, 422, 436). And in November 2018, immediately after Dr. Hosick's assessment, the ALJ noted Plaintiff presented alert, oriented, calm, cooperative, forthcoming, casually groomed, relaxed, coherent, with no signs of depression, mood elevation, or anxiety. (*Id.*, pp. 28; 422). In rendering his decision, the ALJ carefully considered the medical records from all sources and found nothing to warrant any additional RFC limitations. Furthermore, it is not the Court's job to reweigh the evidence or decide facts anew. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, the Court must affirm if the Commissioner's decision is supported by substantial evidence. *Id.* (citing *Phillips*, 357 F.3d at 1240 n.8). Here, the ALJ cited to substantial evidence that supports his decision.

*Whether Absences Due to Doctors' Appointments Prevent Full-Time Work*

As to excessive absences based on doctors' appointments, Plaintiff supports her argument by listing her doctors' appointments from December 2017 through October 2018. (Doc. 28, p. 14). In this eleven-month period, Plaintiff had doctors' appointments on two or three days in just five of those months, which equates to approximately twelve appointments in a year. (*Id.*). There is no suggestion as to the length of these appointments or whether they could have been made during non-working hours.

In the response, the Commissioner cites *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) to refute Plaintiff's argument. In *Cherkaoui*, the plaintiff sought review of the decision of the Commissioner of Social Security denying her application for supplemental security income benefits. *Id.* at 902-903. The plaintiff argued the excessive number of medical appointments she attended rendered her disabled. *Id.* at 904. The Eleventh Circuit was unpersuaded. *Id.* It found the number of medical appointments is not an appropriate consideration in determining an RFC, is not a functional limitation, and nothing in the record indicated that she was required to schedule her medical appointments during working hours so that they would interfere with her ability to work. *Id.* Here, for the same reasons, the Court finds Plaintiff's number of medical appointments does not reflect an inability to work because doctors' appointments are not a functional limitation or a restriction on her physical and mental capabilities. Furthermore, there is no evidence these appointments have to be scheduled during work hours. *Id.*

**2.     Short On-The-Job Training**

Plaintiff cites to personal decision notices by the Social Security Administration dated May 9, 2018 and August 8, 2018, in support of her argument that the ALJ should

10

have limited Plaintiff to jobs requiring only short, on-the-job training. (Doc. 28, p. 23). Because the ALJ did not reject these letters,[5] Plaintiff argues they must be accepted as true. Plaintiff provides no legal authority to support this proposition.

Similarly, Plaintiff argues SVP 2 jobs are inconsistent with short, on-the-job training positions. (*Id.*). Plaintiff claims she is limited to SVP 1 jobs because she is limited to very short, on-the-job training. (*Id.*). As the Commissioner points out, the courier job is SVP 2, and therefore unskilled. (*Id.*, p. 28 (citing SSR 00-4p ("unskilled work corresponds to an SVP of 1-2")). And by definition, unskilled work ""can be learned on the job in a short period of time"" (*Id.* (quoting 20 C.F.R. § 404.1568(a)). The Courts finds no error.

### 3.    Set Procedures, Sequence, or Pace

Plaintiff also argues she does not have the temperament for the courier and housekeeper jobs based on Dr. Matar's opinion that Plaintiff has moderate limitations, and Dr. Hosick's opinion that Plaintiff had extreme limitations, in concentration, persistence, and pace. (Doc. 28, p. 24). The Commissioner argues the ALJ followed Dr. Matar's moderate severity finding at steps two and three, and properly discounted Dr. Hosick's findings. (Doc. 28, pp. 36-37; Tr. pp. 24, 25-26). As stated above, Dr. Hosick's findings as to severity are "other medical evidence" and not his opinion, and the Court finds the ALJ properly afforded little weight to Dr. Hosick's findings as to the severity of Plaintiff's mental impairments. But even with moderate limitations, the Court agrees with the Commissioner that it does not follow that such limitations would preclude repetitive work with set procedures, sequence, or pace as Plaintiff contends. And once again,

---

[5] Plaintiff argues the Explanation of Determination letters (Tr., pp. 106, 108) limit Plaintiff to SVP 1 jobs. (Doc. 28, p. 23).

11

Plaintiff cites no authority in support of her contention.

### 4. Reaching

Plaintiff argues that while the ALJ afforded great weight to the opinions of Drs. Matar and Rodriguez, he failed to incorporate their findings that Plaintiff had a dysfunction of major joints and was limited to reaching no more than occasionally. (Doc. 28, pp. 23, 25). But both doctors actually limited Plaintiff to frequent overhead reaching, not occasional. (Tr. p. 82, 97). And Plaintiff's RFC precludes her from "no more than frequent handling and reaching overhead with the right upper extremity[.]" (*Id.*, p. 26). Simply, Drs. Matar and Rodriguez's opinions are consistent with Plaintiff's RFC.

### 5. Lifting

Plaintiff mentions Michael Rosenberg, M.D. and his observation and diagnosis of pain in Plaintiff's left shoulder, as well as her own testimony about her lifting capabilities, to argue that she can lift only one gallon of milk and is therefore limited to less than light work. (*Id.*, p. 25). But the ALJ discounted Dr. Rosenberg's opinion because the ALJ found it was not supported by diagnostic imaging and there were no function-by-function limitations provided. (*Id.*, p. 30). Further, Plaintiff cites to no medical evidence to support her contentions. Nonetheless, the ALJ did consider Plaintiff's left shoulder pain, and specifically accounted for this condition in the lift and carry limitations by limiting her to light work in the RFC. (Tr., p. 29). And although an ALJ must consider the opinions of medical sources in an RFC assessment and Plaintiff's ability to work, the ultimate RFC determination is within the province of the ALJ and not Plaintiff's doctors. *See* 20 C.F.R. § 404.1527(d); *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also Falberg v. Colvin*, No. 8:14-cv-1101-T-TGW, 2015 WL 12840465, * (M.D. Fla.

July 16, 2015) (finding the Social Security regulations state the ALJ must determine a plaintiff's RFC).

### 6. Hypothetical to Vocational Expert

Finally, Plaintiff argues by rejecting Dr. Hosick's evaluation and limitation findings and not including them in the RFC, the ALJ erred in his hypothetical questions to the vocational expert. (Doc. 28, pp. 14-15). If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). However, an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Here, the ALJ included all of the limitations he found were supported by the record in the RFC and later in the hypothetical to the vocational expert and therefore, did not err in the hypotheticals posed to the vocational expert.

Thus, in accordance with the standard of review and applicable burden of proof, the Court finds the ALJ applied the correct legal standard in assessing Plaintiff's RFC and posing hypotheticals to the vocational expert, and his findings are supported by substantial evidence

### C. Whether substantial evidence supports the ALJ's finding that jobs existed in significant numbers in the national economy Plaintiff could perform

Plaintiff's RFC precluded her from performing complex and detailed tasks, limited her to no more than occasional interaction with supervisors and the public, and no more than occasional changes in a workplace setting. (Tr. p. 26). The ALJ then asked the

vocational expert if jobs existed in significant numbers in the national economy which Plaintiff could perform, and the vocational expert identified the jobs of housekeeper and courier. (Tr., p. 32). Both representative jobs have an SVP of 2. (*Id.*, pp 32, 70-71). The ALJ relied on the vocational expert's testimony and found it consistent with the DOT. (*Id*, p. 32.).

Plaintiff attacks the ALJ's step-five finding on two fronts. First, Plaintiff argues the representative jobs identified by the vocational expert and adopted by the ALJ exceed Plaintiff's limitations, including some limitations found in the RFC. (Doc. 28, p. 22, 23). Second, Plaintiff argues the ALJ erred in relying of the vocational expert's job numbers. (*Id.*, p. 24, 25).[6]

Plaintiff's RFC precluded her from performing jobs that required "complex *and* detailed tasks." (Tr. p. 26 (emphasis added)). Plaintiff focuses only on the ability to carry out "detailed" tasks and ignores the conjunctive language that precludes Plaintiff from tasks that are both detailed *and* complex. (Doc. 28, p. 22, 23).[7] On the grounds that the courier occupation has a reasoning level of 2, which requires the ability to carry out detailed but uninvolved written or oral instructions, Plaintiff argues these types of jobs exceed her limitations. (Doc. 28, p. 22). But as stated above, Plaintiff has not shown the courier job requires both detailed *and* complex tasks. Nonetheless, the Court need not reach this issue because the housekeeper job identified by the vocational expert has a

---

[6] All other RFC issues raised by Plaintiff under the second issue were discussed previously within the first issue.

[7] So for example, the RFC does not limit Plaintiff to tasks that are detailed but simple, or complex tasks that are not detailed.

14

reasoning level of 1.[8] And Plaintiff has not argued she is incapable of performing jobs at this reasoning level. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020); *Pierce v. Comm'r of Soc. Sec.*, No. 8:18-CV-3114-T-JSS, 2020 WL 995850, at *4 (M.D. Fla. Mar. 2, 2020); DICOT § 323.687.014, 1991 WL 672783; *see also Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (declining to decide whether an apparent conflict exists because the ALJ found the plaintiff could perform other jobs that exist in significant numbers in the national economy identified by the vocational expert). Thus, any error by the ALJ that Plaintiff could perform work as a courier is harmless because there are other jobs in the national economy, such as housekeeper, that she is qualified to perform. *Valdez*, 808 F. App'x at 1009.

Plaintiff also argues substantial evidence does not support the ALJ's finding that a significant number of jobs exist in the national economy that Plaintiff can perform. (Doc. 28, p. 24). Plaintiff asserts the housekeeper and courier jobs fall within a statistical group of jobs in the Occupation Employment Survey ("OES"), and some of these jobs are part time, and some of these jobs fall outside Plaintiff's RFC limitations. (*Id.*, pp. 24-25).

"The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). When a plaintiff cannot perform a full range of work at a certain exertional level, "the primary method for determining whether

---

[8] Reasoning Level 1 is defined as: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* 1991 WL 672783, 323.687-014 Cleaner, Housekeeping, DICOT 323.687-014.

15

the claimant can perform other jobs is through the testimony of a VE." *Id.* (citation omitted). If the Commissioner finds there are jobs a plaintiff is able to perform, then the Commissioner must show these jobs exist in the national economy in significant numbers either in the region where the plaintiff lives or in several other regions in the country. *Id.* (citing 20 C.F.R. § 404.1566(a)). "The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number. . . . We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers." *Id.* (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). Further, "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

Here, the vocational expert's testimony constituted substantial evidence that supports the ALJ's decision that jobs exist in significant numbers in the national economy that an individual with Plaintiff's limitations could perform. First, at the hearing Plaintiff was represented by counsel (although different than present counsel) who did not object to the vocational expert testifying. (Tr. pp. 65-66). Second, at the hearing Plaintiff's counsel did not question the vocational expert's testimony regarding the number of jobs. (Tr. pp. 72-73); *See Campbell v. Comm'r of Soc. Sec.*, No. 8:18-CV-2491-T-TGW, 2020 WL 859845, *3 (M.D. Fla. Feb. 20, 2020) (finding significant that Plaintiff was represented by counsel who stipulated to the vocational expert's qualifications and did not ask about the job numbers at the hearing); *see also*, *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 782 (11th Cir. 2019) (finding that a reasonable person would accept the expert's

testimony in light of the plaintiff not objecting to the job numbers' calculation at the hearing and the expert basing her job calculation on her experience, expertise, and onsite job analysis). And third, the vocational expert, David Jackson, Ph.D. is highly qualified and experienced. (Tr. pp. 258-265). Therefore, there is nothing in the record that supports the argument that Plaintiff is now making. *See Campbell*, 2020 WL 859845, at *3 (citing *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) (finding "[i]t is a foundational principal of administrative law that a reviewing court must review only the information that was before the agency at the time of its decision in assessing whether that decision was permissible.")). "Consequently, the plaintiff cannot bolster his argument by information that is not in the record." *Id.*

"The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012); *Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011); *see also Curcio v. Comm'r of Social Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) ("[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise."). In this case, the ALJ asked the vocational expert if there were jobs in the national economy that would fit the limits he proposed, and the vocational expert testified as to two representative jobs, noting the number of jobs in the national economy for each of these positions. (Tr., p. 71). The Court therefore finds the vocational expert's testimony constitutes substantial evidence and a reasonable person would accept this evidence as

adequate to support the conclusion there are jobs available in significant numbers in the national economy Plaintiff could perform.[9]

Thus, in accordance with the standard of review and applicable burden of proof, the Court finds the ALJ applied the correct legal standard in assessing whether Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy and his findings are supported by substantial evidence.

### D. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds the decision of the Commissioner is supported by substantial evidence and there was either no error or no harmful error.

It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

---

[9] The Joint Memorandum (Doc. 28) was filed prior to the recent decision in *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285 (11th Cir. 2020), discussing job numbers and specifically occupational clusters. In *Goode*, the Eleventh Circuit determined that on remand, the vocational expert must determine the correct SOC group code, determine the total number of jobs available in that SOC code, and then determine how many DOT codes are in that SOC group. *Id.* at 1284. "From there, the vocational expert must estimate the number of available jobs for bakery workers, and provide some explanation for how he arrived at that latter number." *Id.* But in a footnote, the Eleventh Circuit distinguished *Goode*, where counsel questioned the vocational expert at the hearing as to the job numbers, from cases—such as the instant case—where the attorney "failed to challenge or question the vocational expert's methodology or job numbers." *Id.* at 1284 n.3. Here, counsel did not raise any issue at the hearing as to the job numbers, not even in a general sense, to warrant remand. *Id.* (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) ("'It is enough to raise the job numbers issue in a general sense before the ALJ. A claimant may do so by inquiring as to the evidentiary basis for a [vocational expert's] estimated job numbers[.]'"))

Respectfully recommended in Chambers in Fort Myers, Florida on September 25, 2020.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**